UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JOSE LUIS NIETO TORRES,

     Petitioner,

v.                                                                           No. 1:25-CV-197-H

KRISTI NOEM, et al.,

     Respondents.

**<u>ORDER</u>**

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Jose Luis Nieto Torres, a native and citizen of Mexico, is one such alien, having illegally entered the United States over 16 years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA and its implementing regulations. Dkt. No. 1 at 14–17. He further argues that applying *Buenrostro-Mendez*'s construction of the INA to him would be impermissibly retroactive. *Id.* at 15. And he also challenges the Department of Homeland Security's automatic-stay regulation, claiming that its application is a violation of the Fifth Amendment's Due Process Clause and that the regulation itself is ultra vires. *Id.* at 17–19.

In light of *Buenrostro-Mendez*, the only remaining non-foreclosed issues are Nieto Torres's claims regarding retroactivity and DHS's automatic-stay regulation. But his retroactivity claim fails, and he lacks Article III standing to bring the automatic-stay claims. Therefore, the petition (Dkt. No. 1) is denied.

1.      **Background**

Nieto Torres illegally entered the United States over 16 years ago, although it is unclear precisely where or when. Dkt. Nos. 1 at 6, 12; 9 at 4. He was apprehended and placed in removal proceedings with a Notice to Appear last August. Dkt. No. 9 at 4. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i).

That same month, an IJ found that Nieto Torres was detained pursuant to 8 U.S.C. § 1226 and ordered his release on bond. Dkt. No. 1 at 13. DHS exercised its authority under 8 C.F.R. § 1003.19(i)(2) and filed an automatic stay of the IJ's determination. *Id.* Shortly thereafter, the BIA issued its decision in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216 (BIA 2025). Nieto Torres has been detained without bond ever since. *See* Dkt. No. 1 at 14.[1]

While detained at the Bluebonnet Detention Center, Nieto Torres filed a petition for a writ of habeas corpus. Dkt. No. 1 at 13. The petition states five claims for relief. First, Nieto Torres alleges that his detention without bond violates the INA. *Id.* at 14–15. He

---

[1] The respondents argue that Nieto Torres has not exhausted his administrative remedies because he did not "appeal [his] custody redetermination with the BIA." Dkt. No. 8 at 13–14. On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado* under the APA. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. __ F. Supp. 3d __, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Nieto Torres's petition does not present an exhaustion problem. *Id.*

– 2 –

argues that Section 1225(b)(2)(A) does not apply to aliens who, like him, previously entered the United States illegally and have been living in the country prior to being apprehended and placed in removal proceedings. *Id.* at 10. In Nieto Torres's view, the proper statutory authority for his detention is Section 1226(a), which permits IJs to release aliens on bond while their removal is pending. *Id.* He also claims that the application of Section 1225(b)(2)(A) in his case is impermissibly retroactive. *Id.* at 15. Second, Nieto Torres argues that his detention without bond violates DHS regulations. *Id.* at 15–17. Third and fourth, he argues that the automatic stay of the IJ's bond order violates his substantive and procedural due-process rights under the Fifth Amendment. *Id.* at 17–19. Finally, he claims that the automatic-stay regulation is itself ultra vires because it exceeds the scope of authority granted by Congress to the Attorney General. *Id.* at 19.

The Court ordered the respondents to show cause why Nieto Torres's petition should not be granted. Dkt. No. 5; *see* 28 U.S.C. § 2243. The respondents timely answered (Dkt. Nos. 8; 9), and Nieto Torres replied (Dkt. No. 10). Two months later, Nieto Torres moved to dismiss his petition without prejudice. Dkt. No. 12.

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The Fifth Circuit found "no material disjunction" between the phrases

"applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## 3.    Analysis

As noted above, Nieto Torres raises five claims in his habeas petition—the first two involving the INA and its implementing regulations, and the remaining three relating to DHS's automatic-stay regulation. Dkt. No. 1 at 14–19. As explained below, *Buenrostro-Mendez* forecloses Nieto Torres's first two claims. Thus, the only claims left for consideration are those relating to retroactivity[2] and the automatic-stay regulation. The

---

[2] Nieto Torres does not raise retroactivity as a separate due-process claim. Instead, he mentions it as part of his INA statutory claim. Dkt. No. 1 at 15. Because *Buenrostro-Mendez* did not address the issue of retroactive application, the Court considers it here as a separate claim for relief.

Court has considered whether the Constitution entitles illegal aliens to individualized bond hearings in numerous prior cases.[3]  But this is the first such case in which the Court has considered a challenge to DHS's automatic-stay authority.  And although the Court has previously considered a challenge to the retroactive application of *Yajure Hurtado*, *see Diaz Garcia*, 1:25-CV-247, Dkt. No. 8, at *8–10, this decision was not a final adjudication of the underlying habeas petition.

Nieto Torres's retroactivity argument fails on the merits.  And because he lacks Article III standing to bring his automatic-stay claims, his challenge fails.  The petition (Dkt. No. 1) is therefore denied.

### A.      Nieto Torres's untimely motion to dismiss is denied.

Nieto Torres moves to dismiss his petition for a writ of habeas corpus without prejudice.  Dkt. No. 12.  Because the respondents have answered and have not stipulated to the motion, the Court construes the motion as one pursuant to Federal Rule of Civil Procedure 41(a)(2).  For the following reasons, the motion (Dkt. No. 12) is denied.

"If the plaintiff's right to dismiss by notice or stipulation has expired, dismissal is within the discretion of the district court."  C. Wright & A. Miller, *Federal Practice and Procedures: Civil* § 2364 (4th ed.) (footnotes omitted); *see also Kramer v. Butler*, 845 F.2d 1291, 1294 (5th Cir. 1988).  "In determining whether to grant a dismissal, the principal consideration is whether the dismissal would prejudice the defendant.  If a dismissal would unfairly prejudice the defendant, then the plaintiff's motion to dismiss should be denied."

---

[3] *Higareda-Cano v. Noem*, No. 1:25-CV-225, Dkt. No. 13 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

*Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985); *Wammel v. United States*, No. 4:22-CV-842, 2025 WL 2015390, at *1 (E.D. Tex. July 18, 2025). Particularly relevant here, "after the [petitioner] has concluded his evidence," Rule 41(a)(2) requires "an especially strong showing . . . to warrant voluntary dismissal without prejudice." *Kramer*, 845 F.2d at 1294.

Nieto Torres fails to make the strong showing required for voluntary dismissal without prejudice at this stage. He offers two reasons for granting his motion. First, he recounts the procedural history of this case. Dkt. No. 12 at 1. But the procedural posture of this case counsels against granting a voluntary dismissal without prejudice. *See Kramer*, 845 F.2d at 1294. Because the parties have fully briefed the disputed issues in this case, and the petitioner has concluded his evidence, the bar for granting dismissal is necessarily higher.

Nieto Torres's second reason—his "transfer[] to a detention facility in the State of Georgia"—fails to clear this high bar. Dkt. No. 12 at 1. "Personal jurisdiction and venue are determined at the outset of litigation and are not affected by subsequent events." *Smilde v. Snow*, 73 F. App'x 24, 26 (5th Cir. 2003); *see also Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021). The Court thus sees no compelling reason to grant voluntary dismissal without prejudice.

**B.    The Court has jurisdiction to review Nieto Torres's claims.**

As a preliminary matter, the respondents argue that the Court lacks jurisdiction to review Nieto Torres's petition, citing 8 U.S.C. §§ 1252(g) and 1252(b)(9). But Section 1252(g) "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (internal quotation marks

omitted).  And the Supreme Court in *Jennings v. Rodriguez* rejected the respondents' proposed reading of Section 1252(b)(9) because it would "make claims of prolonged detention effectively unreviewable."  583 U.S. 281, 293 (2018).  Accordingly, the INA does not bar the Court's jurisdiction over Nieto Torres's petition.

> **C.**      ***Buenrostro-Mendez* forecloses Nieto Torres's INA claims.**

Nieto Torres argues that Section 1225(b)(2)(A) does not apply to him because he "was found in the United States approximately 16 years after his unlawful entry" and "is obviously *not* seeking admission into the country."  Dkt. No. 1 at 6 (emphasis in original). He does not address whether he is an "applicant for admission" under the INA.  But he is. Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Nieto Torres is an "alien."  He is "present in the United States."  And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted").  As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at 498.  Thus, Nieto Torres's INA claim fails.[4]

Nieto Torres likewise claims that the application of Section 1225(b)(2)(A) violates the INA's implementing regulations.  Dkt. No. 1 at 15–17.  But even if his reading of the relevant regulations were correct, he is not entitled to relief.[5]  Insofar as such regulations

---

[4] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue.  *Supra*, n.3.

[5] The Fifth Circuit, for its part, held that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text."  *Buenrostro-Mendez*, 166 F.4th at 506.

"contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).

>    **D.   Nieto Torres fails to show that the application of Section 1225(b)(2)(A) to unadmitted aliens is impermissibly retroactive.**

As part of his INA claim, Nieto Torres also argues that the application of Section 1225(b)(2)(A) to aliens who, like himself, are present in the United States without admission, "would be impermissibly retroactive." Dkt. No. 1 at 15. The Court is unpersuaded.

Retroactivity claims like Nieto Torres's implicate core due-process interests. To illustrate the point, he cites *Monteon-Camargo v. Barr*, 918 F.3d 423, 430 (5th Cir. 2019). There, the Fifth Circuit held that when a court decides whether to apply retroactively a case of first impression, the court must "balance the ills of retroactivity against the disadvantages of prospectivity." *Id.* at 430 (internal alteration omitted) (quoting *Microcomputer Tech. Inst. v. Riley*, 139 F.3d 1044, 1050 (5th Cir. 1998)). "If that mischief [of prospectivity] is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). But "[u]njustified 'reliance' is no bar to retroactivity." *Solem v. Stumes*, 465 U.S. 638, 646 (1984). And the Supreme Court has been disinclined "to limit the effect of a decision that has been 'distinctly foreshadowed.'" *Id.* (quoting *Brown v. Louisiana*, 447 U.S. 323, 336 (1980)).

*Monteon-Camargo* is an instructive case for this retroactivity balancing test. There, the petitioner sought the Fifth Circuit's review of a final order of removal by the BIA. 918 F.3d

– 8 –

at 426–27.  The BIA determined that the petitioner was ineligible for cancellation of removal due to his conviction for attempted theft based on one of its decisions rendered nearly a decade after the predicate offense occurred.  *Id.*  That decision was *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), which announced that a theft offense is a crime involving moral turpitude (CIMT) if committed under certain circumstances.  *Monteon-Camargo*, 918 F.3d at 427.  This expansion of the definition of a CIMT was significant because Congress left the term "moral turpitude" undefined; the task of interpretation was left to the BIA.  *Id.* at 428.  So the addition of "an entirely new category of theft offenses to those considered CIMTs" constituted a truly novel expansion of a statutory term.  *Id.* at 431.

Multiple considerations led the Fifth Circuit to hold that retroactive application should not occur.  First, criminal defendants may have pled guilty to "crimes that they rightly thought, based on the [BIA's] prior position, did not constitute CIMTs."  *Id.* at 430. Accordingly, retroactive application of the rule would "compromise the familiar due process considerations of fair notice, reasonable reliance, and settled expectations."  *Id.* at 430–31 (citation modified).  Second, the change was "significant" and "drastically chang[ed] the landscape" by adding "an entirely new category of theft offenses to those considered CIMTs."  *Id.* at 431.  In view of these serious disadvantages, the Fifth Circuit held that the retroactive application of the rule announced in *Diaz-Lizarraga* was impermissible.  *Id.*

But these considerations do not apply here.  First, there are few, if any, reliance interests implicated.  In *Monteon-Camargo*, the Fifth Circuit appropriately weighed the interests of aliens who pled guilty to theft offenses in reliance on the pre-*Diaz-Lizarraga* status quo, under which such offenses were not deemed CIMTs.  *Id.* at 430.  But even under the more permissive policies of prior administrations, the availability of bond was never such a

certainty.  Indeed, Section 1226 authorizes the Attorney General, in her discretion, to "continue to detain [an] arrested alien" or "release the alien" on bond or parole.  8 U.S.C. § 1226(a)(1)–(2).  This "discretionary judgment . . . shall not be subject to [judicial] review," and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien."  § 1226(e).  Before *Diaz-Lizarraga*, there was a steady principle.  Here, the status quo ante was unreviewable discretion.

More to the point, the notion that aliens choose to enter and remain in this country illegally in reliance on a set of laws that "have been described as second only to the Internal Revenue Code in complexity" strains credulity.  *United States v. Texas*, 719 F. Supp. 3d 640, 666 (W.D. Tex. 2024) (internal quotation marks omitted); *see* Dkt. No. 1 at 15.  Consider the following: The Fifth Circuit's concern in *Monteon-Camargo* was the petitioner's decision to plead guilty—a choice the Constitution requires to be "voluntary, knowing, and intelligent" after being "instructed in open court on the nature of the charge to which the plea is offered."  *United States v. Diaz*, 989 F.3d 390, 393 (5th Cir. 2021) (internal quotation marks omitted).  Because "[a] guilty plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts," *id.* (internal quotation marks omitted), the retroactive application of the BIA's decision struck at the heart of due process.

Not so here.  Because "[b]eing found in the United States illegally is a continuing offense that . . . continues until the defendant is found," *United States v. Hernandez-Flores*, 460 F. App'x 434, 435 (5th Cir. 2012) (citing *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996)), the Court is unpersuaded that Nieto Torres's detention without bond implicates similar retroactivity concerns.  Nieto Torres entered the country illegally over 16 years ago.  Dkt. No. 1 at 12.  While Nieto Torres resided in the country illegally, one

immigration court began denying bond hearings based on the same construction of Section 1225(b)(2)(A) at issue here.  *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1306–07 (W.D. Wash. 2025).  Particularly over the last year, the executive branch has publicly signaled its intent to exercise its full authority in enforcing immigration law.[6]  Each of the nearly six-thousand days that Nieto Torres remained in the country was a continuation of his offense—all while the federal immigration-enforcement landscape changed.  He cannot now "turn back the clock to a time when [a bond hearing] was available as a matter of practice." *Goyo Martinez v. Noem*, 1:25-CV-256, 2026 WL 114418, at *7 (N.D. Tex. Jan. 15, 2026) (citation modified).

Second, the Court is unpersuaded that the statutory construction adopted in *Yajure Hurtado* and *Buenrostro-Mendez* presents a change materially similar to the one in *Monteon-Camargo*.  The Supreme Court has, for more than a century, endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be in vain if those accused could not be held in custody . . . while arrangements were being made for their deportation.").  To be sure, the Supreme Court acknowledged in *Demore v. Kim* that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a

---

[6] Moreover, on July 8, 2025, DHS distributed an internal policy memorandum advising that it had "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission."  *See Zuniga v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-221, 2026 WL 3755126, at *6 (N.D. Tex. Dec. 29, 2025) (internal quotation marks omitted).  Twenty days later, immigrants'-rights advocates filed a class-action lawsuit to challenge the new policy.  *See Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 2670875 (C.D. Cal. July 28, 2025).  All of this transpired before Nieto Torres's detention.

"constitutionally valid aspect of the deportation process." *Id*. Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id*. at 528.

And as an "applicant for admission," Nieto Torres has "only those rights regarding admission that Congress has provided by statute." *DHS. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). Those statutory rights have never categorically shielded any applicant for admission from detention. The decision to grant bond or parole is committed to the discretion of the Attorney General. *See* 8 U.S.C. § 1226(a); *Jennings*, 583 U.S. at 303. And the exercise of that discretion is not reviewable. *See* § 1226(e) (providing that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole").

These considerations make this case different from *Monteon-Camargo*. There, the BIA's decision was determinative of his right. Before *Diaz-Lizarraga*, the petitioner's offense was categorically excluded from the definition of a CIMT. 918 F.3d at 428. Afterwards, it was categorically *included. Id.* Before, he was eligible for cancellation of removal; afterwards, he was statutorily ineligible. *Id.* Here, in contrast, the permissibility of detention pending removal is long established.

The availability of judicial review only accentuates the point. The judicial review of judgments regarding the grant or denial of cancellation of removal is governed by a complex

set of rules.  Section 1252 of the INA strips courts of jurisdiction over judgments regarding the granting of cancellation of removal.  *See* 8 U.S.C. § 1252(a)(2)(B)(i).  But another provision "restores jurisdiction to review 'questions of law.'"  *Wilkinson v. Garland*, 601 U.S. 209, 218 (2024) (citing 8 U.S.C. § 1252(a)(2)(D)).  And although "questions of fact underlying denials of discretionary relief are unreviewable," "petitions raising mixed questions of law and fact are always reviewable as questions of law under [Section] 1252(a)(2)(D)."  *Id.* at 218–19.

Compare this to the complete lack of judicial review of bond determinations.  *See* § 1226(e).  The pre-*Yajure Hurtado* and *Buenrostro-Mendez* status quo meant that aliens detained pursuant to Section 1226(a) could request a bond hearing, but the ultimate decision to grant or deny bond was subject to the IJ's unreviewable discretion.  *Id.*  Nieto Torres's position is therefore quite different from that of the petitioner in *Monteon-Camargo*.  Prior to *Diaz-Lizarraga*, that petitioner could apply for cancellation of removal, appeal an adverse determination to the BIA, and appeal an adverse BIA determination to the court of appeals. But the retroactive application of *Diaz-Lizarraga* meant that the petitioner was statutorily barred from seeking such relief at all.  *See Monteon-Camargo*, 918 F.3d at 428; 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Thus, it is not impermissibly retroactive to apply the DHS policy announced in *Yajure Hurtado* and affirmed as binding in *Buenrostro-Mendez* to Nieto Torres.  The disadvantages of retroactive application identified in *Monteon-Camargo* are not present here. Accordingly, Nieto Torres's retroactivity argument fails.

> **E.** **Nieto Torres fails to demonstrate standing to bring his automatic-stay claims.**

Finally, Nieto Torres asserts three claims concerning DHS's automatic-stay regulation set forth in 8 C.F.R. § 1003.19(i)(2). The first two of these claims argue that the respondents' use of the automatic stay violates his rights to substantive and procedural due process. Dkt. No. 1 at 17–19. His third claim asserts that the automatic-stay regulation "is ultra vires because it exceeds the scope of authority granted by Congress to the Attorney General." *Id.* at 19. "By allowing DHS to unilaterally impose an automatic stay and prolong a noncitizens' [sic] detention," Nieto Torres argues, "the regulation improperly extends authority beyond what Congress delegated to the Attorney General." *Id.* But all three of these claims fail because Nieto Torres lacks Article III standing to bring them.

"Federal courts have 'an independent duty to examine the basis of their jurisdiction.'" *Biziko v. Van Horne*, 981 F.3d 418, 420 (5th Cir. 2020) (quoting *Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 595 (5th Cir. 2017)). And standing is a prerequisite to the Court's jurisdiction. *In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 395 (5th Cir. 2010). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). These criteria ensure that "federal courts do not adjudicate hypothetical or abstract disputes," thereby rendering themselves "roving commission[s] to publicly opine on every legal question." *Id.* The petitioner "bear[s] the burden of demonstrating that [he] ha[s] standing." *Id.* at 430–31.

– 14 –

The automatic-stay regulation "provides for an automatic stay of an IJ's order for release of an alien in any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more upon DHS's filing of a notice of intent to appeal." *Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1031 (E.D. Wis. 2007).  DHS filed its notice of intent to appeal Nieto Torres's bond redetermination on August 29, 2025.  *See* Dkt. No. 1-2 at 12.  The notice states that "[t]he stay shall lapse if ICE does not file a notice of appeal along with appropriate certification within ten business days of the issuance of the order of the [IJ], or upon ICE's withdrawal of this notice[.]"  *Id.*  This ten-business-day stay "provide[s] a means for DHS to maintain the status quo in those cases where it chooses to seek an expedited review of the IJ's custody order."  *Hussain*, 492 F. Supp. 2d at 1031.

Even assuming Nieto Torres can establish an injury-in-fact caused by the respondents' use of the automatic stay, he cannot show that it is redressable in habeas.  To demonstrate redressability, a petitioner must demonstrate that the relief he seeks will redress the injury alleged.  *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799–800 (5th Cir. 2012).  The Court lacks "jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury."  *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021).  A petitioner "must maintain a personal interest in the dispute at every stage of litigation, including when judgment is entered . . . and must do so separately for each form of relief sought."  *Id.*  And because they "are merely a 'byproduct' of a suit that already succeeded," a "request for attorney's fees or cost" cannot satisfy the redressability requirement.  *Id.* at 292.

On September 5, 2025—less than a week after the respondents filed an automatic stay of the IJ's bond decision—the Board of Immigration Appeals issued its decision in

*Yajure Hurtado*. This decision held that 8 U.S.C. § 1225(b)(2)(A) divests IJs of "authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." 29 I. & N. Dec. at 216. And in *Buenrostro-Mendez*, the Fifth Circuit held that "[this] position is correct": "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted" "shall be detained" pending their removal proceedings. 166 F.4th at 498–99 (quoting 8 U.S.C. § 1225(b)(2)(A)). Thus, by the time Nieto Torres filed his habeas petition on October 2, 2025, the ten-business-day stay period had long since lapsed, and a bond redetermination hearing was precluded by *Yajure Hurtado*'s construction of the INA. *See* Dkt. No. 1. And the statutory construction mandating his detention is now compelled by binding Fifth Circuit precedent. *See Buenrostro-Mendez*, 166 F.4th at 498. Accordingly, his detention is not merely lawful; it is mandated by law.

Nieto Torres thus fails to demonstrate that his automatic-stay claims are redressable. He asks the Court to grant his petition, provide "declaratory relief that [his] detention is unlawful," order his release from custody, order the respondents not to transfer him to any other detention facility, and award him reasonable attorney's fees and costs. Dkt. No. 1 at 20. Crucially, "[h]abeas exists solely to 'grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.'" *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)). Nieto Torres fails to explain why any injury caused by the respondents' use of their automatic-stay authority would render his detention—which is mandated by binding precedent—unlawful.

Having failed to show that his detention is unlawful, and having failed to request any relief that could remedy any injury incurred by virtue of the automatic stay, the Court

– 16 –

concludes that Nieto Torres lacks standing to bring his claims challenging the automatic stay. *See Lujan*, 504 U.S. at 560–61. Therefore, the Court lacks jurisdiction to hear these claims.

**4.      Conclusion**

In short, Nieto Torres, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. His motion to dismiss (Dkt. No. 12), filed long after the respondents answered, is denied. His claims that are not foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez* fail, too. The application of Section 1225(b)(2)(A) to Nieto Torres is not impermissibly retroactive, and he fails to demonstrate standing for his automatic-stay claims. Accordingly, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on March 9, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE